1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   VASILIY POPOV,

11              Petitioner,                    No. CIV-S- 09-1312 KJM[1] P

12        vs.

13   M. MARTEL,

14              Respondent.              <u>ORDER</u>

15   _____/

16             Petitioner is a state prison inmate proceeding pro se with a petition for a writ of

17   habeas corpus challenging his Placer County convictions for gross vehicular manslaughter while

18   intoxicated, among other things.  Respondent has filed a motion to dismiss, arguing that the

19   petition is not timely and contains unexhausted claims.  The court will not address the exhaustion

20   question because it finds the petition is not timely.

21   I.  <u>Background</u>

22             On June 29, 2006, petitioner was sentenced to a total term of sixteen years, four

23   months to life.  Lodged Document (Lodg. Doc.) No. 1.  He did not appeal his conviction, but

24   /////

25   _____

26        [1]  Both parties have consented to magistrate judge jurisdiction.

rather filed a petition for a writ of habeas corpus in the California Supreme Court on May 14,

2007.[2]  Lodg. Doc. No. 2.  This petition was denied on September 25, 2007.  Lodg. Doc. No. 3.

The instant petition was filed on May 10, 2009.

II.  The Statute of Limitations

A.  Statutory Tolling

One of the changes the Antiterrorism and Effective Death Penalty Act (AEDPA)

made to the habeas statutes was to add a statute of limitations for filing a habeas petition:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post- conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.

/////

[2]  The court relies on the date petitioner signed the petition.  Based on the prison mailbox rule of Houston v. Lack, 487 U.S. 266, 276 (1988), a document is filed when it is given to prison authorities for mailing.

1    Under 28 U.S.C. § 2244(d)(1)(A), the limitations period started upon "the

2    expiration of the time for seeking review."  When a petitioner does not file an appeal, the

3    limitations period will begin running the day after the date on which the time to seek such review

4    expires.  See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Fed. R. Civ. P.

5    6 to calculation of time periods); Williams v. Carey, 2009 WL 720962 at 3 (E.D. Cal. 2009).  In

6    California, a defendant has sixty days in which to file a direct appeal.  See Cal. Rule of Court

7    8.308.  Accordingly, petitioner's conviction became final on August 29, 2006 and the statute of

8    limitations began running on August 30, 2006.

9    The statute of limitations is tolled during the pendency of any "properly filed"

10   state collateral attack on the judgment.  Nino v. Galaza, 183 F.3d 1003, 1006-07 (9th Cir. 1999).

11   The Supreme Court petition was filed on day 257 of the limitations year and stopped the clock

12   until the denial was issued on September 25, 2007.  When the statute began running again on

13   September 26, 2007, petitioner had an additional 108 days in which to file a timely federal

14   petition.  That period expired on January 12, 2008.  The instant petition, filed on May 10, 2009,

15   is not timely.

16   Petitioner argues that he is entitled to a later triggering date for the statute of

17   limitations for two reasons.  First, he alleges he was not aware of the basis of any claims until

18   fellow inmates reviewed his transcripts and identified the issues.  He does not rely solely on his

19   ignorance as a layman, but also on the fact that he is Russian speaking and must rely on the

20   assistance of other Russian speaking inmates to translate for him.  Second, he argues he did not

21   receive timely notice that the California Supreme Court had denied his petition.  See Pet., Ex. 1

22   ¶¶ 5, 6; Opp'n, Ex. 2 ¶¶ I,  IV-V, IX.  It is petitioner's burden to show he is entitled to tolling.

23   Banjo v. Ayers, ___ F.3d ___, 2010 WL 2403751 at 2 (9th Cir., June 17, 2010).

24   1. Factual Predicate

25   Under section 2244(d)(1)(D), "[t]ime begins when the prisoner knows (or through

26   diligence could discover) the important facts, not when the prisoner recognizes their legal

3

1   significance." Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001).  The diligence required

2   under this section is not "the maximum feasible diligence" but rather "reasonable diligence in the

3   circumstances," including physical confinement, which "can limit a litigant's ability to exercise

4   due diligence." Schlueter v. Varner, 384 F.3d 69, 74, 75 (3rd Cir. 2004) (internal quotations

5   omitted).

6           Petitioner suggests he was not aware of the factual predicate of his writ until

7   sometime in 2007, when he met "a fellow prisoner with some legal knowledge who reviewed my

8   . . . transcripts. . . ." Pet., Ex. 1 ¶ 6.  He expands on this in opposition to respondent's motion by

9   noting his limited ability to speak English.  He says he only became aware of the claims "when

10  American born English speaking inmates who understood law and legal issues looked over my

11  legal papers" and when "other inmates who could speak Russian translated for me so I could get

12  an accurate understanding of what was being related to me regarding my former counsel's

13  ineffectiveness." Opp'n, Ex. 2 ¶¶ II, IV.  He then argues it was precisely because of his limited

14  language skills that he could not be aware of the factual basis of his claims, even though he had

15  the transcripts and had been present in court, until he found the right combination of Russian-

16  speakers and legally savvy inmates, one group to translate the language, the other to translate the

17  law.  He does not specifically identify when this occurred, but implies that the triggering date

18  should be May 2007 when he filed his Supreme Court petition.

19          This argument is unavailing.  Even assuming that the circumstances petitioner

20  describes could constitute the discovery of the factual basis of his writ, he has made absolutely

21  no showing of even minimally feasible diligence in obtaining lingual and legal assistance

22  between the beginning of the statute of limitations period and May 2007 when he first filed his

23  state petition.  His declarations are silent about any efforts he made to seek legal help in Russian

24  or in English.  See Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir.), cert. denied sub nom. Diaz v.

25  Conway, ___ U.S. ___, 129 S.Ct. 168 (2008) (in equitable tolling context, a petitioner has "a

26  substantial obligation to obtain assistance to mitigate his language deficiency"); see also

4

1    Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006) (petitioner made several trips to law

2    library but found only books in English and only English speaking clerks).

3               Moreover, even if the court were to use, for example, May 1, 2007 as a new

4    triggering date, the petition still would not be timely.  Petitioner's state petition would have been

5    filed on day 14 of the AEDPA year.  When the statute would have begun running again, on

6    September 26, 2007, there would have been 351 days left – until September 11, 2008 – in which

7    to file a federal petition.  This petition, filed on May 10, 2009, would not be timely.

8               2.  Notice Of Supreme Court Denial

9               Petitioner contends he did not learn that the Supreme Court had denied his

10   petition until February 2009, after he wrote inquiring about the status, and argues this belated

11   notice constitutes an impediment to his timely filing within the meaning of section

12   2244(d)(1)(B).

13              To fall within this section, petitioner must show that state officials interfered with

14   his ability to prepare and file his habeas petition and that the action violated petitioner's

15   constitutional rights.  Bryant v. Schriro, 499 F.3d 1056, 1059 (9th Cir. 2007); Shannon v.

16   Newland, 410 F.3d 1083, 1087 (9th Cir. 2005).  Petitioner has not met any part of this showing.

17              First, he alleges only that he did not receive the Supreme Court's decision, but

18   presents nothing from that court showing the decision was mailed to the wrong address or that it

19   was not mailed at all, and nothing from the prison, such as a legal mail log from the relevant time

20   period showing whether the decision arrived at the prison but was somehow rejected.  Compare

21   Lewis v. Mitchell, 173 F.Supp.2d 1057, 1062 (C.D. Cal. 2001) (in context of equitable tolling

22   issue, petitioner presented proof that prison rejected the legal mail because it did not include

23   inmate's prison number); Earl v. Fabian, 556 F.3d 717 (8th Cir. 2009) (state moved inmate to

24   undisclosed location; did not notify counsel; and failed timely to provide counsel's letter about

25   denial to inmate).

26   /////

Second, petitioner has not shown he was prevented from timely filing.  Even if he assumed his state habeas action was still pending, petitioner could have filed a protective petition and asked this court to stay the proceedings pending exhaustion.  See Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005).

Third, petitioner has not shown that the state action (or inaction) violated the constitution, for there is no constitutional right to file a timely federal habeas petition.  Ramirez v. Galaza, 571 F. 3d 993 (9th Cir. 2009).

B.  Equitable Tolling

To receive equitable tolling, petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace, 544 U.S. at 418; Holland v. Florida, ___ U.S. ___, 130 S.Ct. 2549, 2010 WL 2346549 at 12 (2010).  The Ninth Circuit has explained:

> To apply the doctrine in "extraordinary circumstances" necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances "stood in his way" suggests that an external force must cause the untimeliness, rather than, as we have said, merely "oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.

Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.), cert. denied, ___ U.S. ___, 130 S.Ct. 244 (2009) (internal citation omitted).  It is petitioner's burden to show he is entitled to equitable tolling.  Espinoza-Matthews v. People of the State of California, 432 F.3d 1021, 1026 (9th Cir. 2005).

1.  Language Barrier

As noted above, petitioner may be entitled to equitable tolling if his difficulties in obtaining assistance in Russian prevented him from timely filing his petition.  Mendoza, 449 F.3d at 1070.  To satisfy the requirements for equitable tolling, however, the petitioner "must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation

1    assistance from an inmate, library personnel, or other source." Id. Petitioner has made no such

2    showing.

3                     2.   Delayed Receipt Of Supreme Court's Decision

4          Equitable tolling may be available if a petitioner demonstrates he did not receive

5    a court's decision in a timely fashion. Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009)

6    (remanding for determination when petitioner received notice). In this case, petitioner has

7    presented a copy of the letter he wrote to the Supreme Court in February 2009, the envelope from

8    the court, also dated February 2009, and a copy of the Supreme Court docket, with a print date of

9    February 2009. Pet., Exs. D & E. The court will accept these documents, for purposes of this

10    order, as proof that petitioner did not receive notice until February 2009. Nevertheless, petitioner

11    has not shown he was pursuing his rights diligently until that time.

12          Petitioner argues that Knight v. Schofield, 292 F.3d 709 (11th Cir. 2002) controls

13    the evaluation of the diligence in this case. In Knight, the inmate filed a petition for discretionary

14    review and asked the clerk of the court when he could expect a ruling; the clerk said he would be

15    notified as soon as a decision was issued. When the ruling was filed, however, the clerk

16    inadvertently sent it to the wrong person. The petitioner contacted the court eighteen months

17    after the ruling had issued and only then learned his petition had been denied. In that case, the

18    court said, "it is understandable that Knight did not make any inquiries . . . because the Georgia

19    Supreme Court clerk had assured him that he would be notified as soon as a decision was made."

20    Id. at 711.

21          In contrast, in Drew v. Department of Corrections, 297 F.3d 1278 (11th Cir.

22    2002), the court found that "one letter," sent to the court after sixteen months, "is plainly an

23    insufficient evidentiary foundation to support Drew's claim of diligence. . . ." The court

24    distinguished Knight on the ground that Knight was entitled to rely on the clerk's assurance,

25    whereas Drew presented nothing suggesting even an initial inquiry and response from a

26    /////

responsible official.  See also LaCava v. Kyler, 398 F.3d 271, 277 (3d Cir. 2005) (no diligence when inmate waited 21 months to inquire as to status of case), cited with approval in Roy v. Lampert, 465 F.3d 964, 972 (9th Cir. 2006).

This case is more like Drew and LaCava than like Knight.  Petitioner filed his state petition and then did nothing from May 2007 until February 2009, a period of twenty-one months.  Moreover, it is not clear that petitioner had timely provided a new address for service of the ruling before February 2009, because the certificate of service for his February 2009 letter identifies the document as a "notise [sic] of current address."  Pet., Ex. E.  He has not shown he was diligently pursuing his rights during the limitations period and thereafter.  He is not entitled to equitable tolling.

III.  Actual Innocence

Petitioner also argues he is actually innocent because his sentence is unlawful and that the miscarriage of justice exception excuses his untimeliness.

In Schlup v. Delo, 513 U.S. 298, 314-15 (1995), the Supreme Court held that a habeas petitioner who makes "a colorable showing of actual innocence" that would implicate a "fundamental miscarriage of justice" may be entitled to have "otherwise barred constitutional claim[s]" considered on the merits.  In Majoy v. Roe, 296 F.3d 770, 775-76 (9th Cir. 2002), the Ninth Circuit assumed that a sufficient Schlup showing might overcome the bar of the statute of limitations.  However, in Lee v. Lampert, ___ F.3d. ___ , 2010 WL 2652505 (9th Cir., July 6, 2010), that court joined four other circuits in holding that "there is no Schlup actual innocence exception to override AEDPA's statute of limitations."  Id. at *7.

/////
/////
/////
/////
/////

Accordingly, IT IS HEREBY ORDERED that:

1. Respondent's January 14, 2010 Motion to Dismiss (Docket No. 15) is granted; and

2. This case is closed.

DATED: July 26, 2010.

_____

U.S. MAGISTRATE JUDGE